734 So.2d 800 (1999)
STATE of Louisiana
v.
Patrick JOHNSON.
No. 98 KA 1407.
Court of Appeal of Louisiana, First Circuit.
April 1, 1999.
*802 James Dukes, Amite, for plaintiff/appellee State of Louisiana.
Katherine Franks, Baton Rouge, for defendant/appellant Patrick Johnson.
*803 Before: CARTER, C.J., SHORTESS and WHIPPLE, JJ.
WHIPPLE, J.
The defendant, Patrick Johnson, was charged by grand jury indictment with second degree murder, in violation of LSA-R.S. 14:30.1. He pled not guilty, and after trial by jury, was found guilty as charged. The defendant received the mandatory sentence of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. He appealed, alleging five assignments of error, as follows:
1. The evidence was insufficient to support the verdict of guilty of second degree murder.
2. The trial judge failed to correctly and fully define the offense of manslaughter.
3. The denial of the appellant's Motion for New Trial constituted an abuse of discretion.
4. Trial counsel was ineffective.
5. Patent error.

FACTS
On August 6, 1992, defendant, Patrick Johnson, was at the Kwikdraw Lounge near Kentwood, Louisiana. The victim, who was defendant's cousin, Robert Carter, was in the parking lot, attempting to repair a go-kart belonging to the victim's brother. The defendant approached the victim, seeking to borrow money. The defendant and the victim exchanged heated words. Testimony at trial revealed that the victim drove away shortly thereafter, but returned to the parking lot. A second argument ensued between the two, concerning an alleged drug transaction between the defendant and the victim's brother. Eyewitnesses testified that the defendant approached the victim from behind and struck him in the head with a hammer. The victim was taken to the hospital and pronounced dead on arrival.
The defendant left the scene after the incident. Later he went to the Kentwood police department and gave a taped statement, admitting striking the victim, but claiming he was threatened by the victim brandishing a screwdriver.
Three witnesses who saw the crime occur testified on behalf of the State. All three witnesses testified that an altercation developed between the defendant and the victim, and that the defendant walked away and later returned to where the victim was standing. All three witnesses saw the defendant hit the victim, and not one of them saw a screwdriver in the victim's hands. One of the witnesses owned the hammer in question and turned it in to the Sheriff's office after the crime.
Photographs were taken of the crime scene, the car used to transport the victim to the hospital, and the victim after his death. The pathologist who performed the autopsy on the victim testified that the cause of death was a blow to the head with a blunt instrument and that death occurred within thirty minutes from the time the victim was struck.
The defendant testified at trial that the victim threatened him with a screwdriver and that, in response, he picked up a hammer from the toolbox and hit the victim with it. The defendant further testified that he did not mean to hit, or kill, the victim. One defense witness testified that he saw a screwdriver in the victim's hand, although he did not actually see the victim get hit. Several character witnesses also testified on the defendant's behalf. Defendant was found guilty, as charged.
Thereafter, a hearing was held on the defendant's Motion for New Trial, during which two additional witnesses testified for the defense. One witness was at the scene of the crime and testified that he saw the victim holding a screwdriver, threatening, and swinging it at the defendant. An additional witness testified that the victim had made threatening statements about the defendant during the week prior to the incident. The defense *804 asserted this testimony was newly discovered evidence from previously unavailable witnesses, thus entitling defendant to a new trial. The court denied the defendant's Motion for New Trial. Defendant now appeals.

ASSIGNMENT OF ERROR NO. 1: SUFFICIENCY OF THE EVIDENCE
In this assignment of error, the defendant contends that the evidence was insufficient to support his conviction.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See LSA-C.Cr.P. art. 821; State v. Johnson, 461 So.2d 673, 674 (La.App. 1st Cir.1984). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in Article 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. McLean, 525 So.2d 1251, 1255 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (La. 1988). However, when a case involves circumstantial evidence, and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La.App. 1st Cir.), writ denied, 514 So.2d 126 (La.1987).
In his brief, the defendant argues that the State failed to prove the requisite specific intent for a finding of guilt of second degree murder and that he acted under provocation, thereby warranting a conviction for manslaughter. The defendant argues in the alternative that he acted in self-defense.
Louisiana Revised Statutes 14:30.1(A)(1) provides, in pertinent part:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm[.]
Louisiana Revised Statute 14:31 provides:
A. Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed[.]
The existence of "sudden passion" or "heat of blood" are not elements of the offense but, rather, are factors in the nature of mitigating circumstances which may reduce the grade of homicide. Provocation is a question of fact to be determined by the trier of fact. State v. Smith, 490 So.2d 365, 370 (La.App. 1st Cir.), writ denied, 494 So.2d 324 (La.1986). The state does not bear the burden of proving the absence of these mitigating factors beyond a reasonable doubt. Consequently, the issue is whether or not any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigating factors were not established by a preponderance of the evidence. State v. Lombard, 486 So.2d 106, 111 (La.1986).
*805 As the trier of fact, the jury is free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir.1984). Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d at 38. On appeal, this court will not assess the credibility of the witnesses or reweigh the evidence to overturn a fact finder's determination of guilt.
In the instant case, there was ample testimony to support the jury's finding that the State proved the elements of the crime of second degree murder and that the mitigating factors were not established by a preponderance of the evidence. The verdict also indicates that the jury accepted the testimony of the State's witnesses and rejected the defense theory of self-defense.
All of the State's witnesses testified that the attack was not provoked. All of the State's witnesses confirmed that the defendant and the victim had argued prior to the attack, but that the defendant walked away and returned to the scene later. Clearly, the jury accepted this testimony over that of the defendant and his witnesses.
On appeal, the defendant presents an alternative argument, asserting that the circumstances suggest that this case should be examined in the context of justifiable homicide, in that he was acting under the "right of imperfect self-defense." The defendant argues that although his conduct may not have met the criteria of the justifiable homicide statute, it nonetheless fell short of the crime of murder, thereby justifying a verdict of manslaughter.
Justifiable homicide is defined in LSA-R.S. 14:20, in pertinent part, as follows:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
When self-defense is raised, the issue is whether or not a rational fact finder, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the defendant did not kill the victim in self-defense. State v. Spears, 504 So.2d 974, 978 (La.App. 1st Cir.), writ denied, 507 So.2d 225 (La.1987).
Here, the defendant was unsuccessful in convincing the jury that he reasonably believed that he was in imminent danger of his life or that the killing was necessary to prevent it. He contends, however, that he felt sufficiently threatened by the victim to strike him with a deadly weapon and that even though deadly force may not have been necessary to end the altercation, he had an imperfect right of self-defense, calling for a manslaughter verdict.
In support of this novel argument, he relies on the dictum enunciated in State v. Dill, 461 So.2d 1130, 1135 (La.App. 5th Cir.1984), writ denied, 475 So.2d 1106 (La. 1985), which referred to the concept of the "imperfect right of self-defense" as described in LaFave, Scott, "Handbook on Criminal Law," Section 77, p. 583. This theory acknowledges that there are homicides which fall short of self-defense, but should not constitute murder, where the defendant is responsible in some measure for bringing on the difficulty, or where the defendant's honest but erroneous belief of imminent harm is less than reasonable. State v. Dill, 461 So.2d at 1135-1136.
In Dill, the Fifth Circuit used Professor LaFave's theory as illustrative in determining the sufficiency question in a case where the defendant was charged with second degree murder, and the jury returned a verdict of guilty of manslaughter, rejecting the defense of justifiable homicide. *806 State v. Dill, 461 So.2d at 1135-1136. In that case, as in the case at bar, the defendant possessed an ability to retreat from the situation and deadly force was not mandated by the situation. State v. Dill, 461 So.2d at 1138. There, unlike the instant case, the court found present mitigatory factors of provocation plus passion, thereby concluding that a verdict of manslaughter was appropriate. State v. Dill, 461 So.2d at 1138. However, those facts are not present in this case.
Louisiana law does not provide for any mitigating circumstance resembling the theory of "imperfect self-defense." We must therefore reject any assertion by the defendant that we should craft jurisprudentially any such mitigating circumstance to the murder statutes. Instead, we view this as a matter to be addressed by the Legislature.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2: JURY INSTRUCTIONS
The defendant complains that the trial court erred by not including the entire manslaughter statute in the jury instructions. The trial court issued jury instructions setting forth the elements of second degree murder, the responsive verdicts of manslaughter and not guilty, and the elements of the crime of manslaughter contained in LSA-R.S. 14:31(A)(1) and (2). The trial court did not address the portion of the manslaughter statute, which includes the perpetration of any felony not enumerated in Article 30 or 30.1, or of any misdemeanor directly affecting the person.
Under Louisiana law, an accused is statutorily entitled to have the trial court instruct the jury as to the law on the charged offense and the elements of the offenses which constitute responsive verdicts. LSA-C.Cr.P. art. 803, 814, 815; State ex rel. Elaire v. Blackburn, 424 So.2d 246, 248 (La.1982), cert. denied, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983).
In the instant case, the defendant was charged with second degree murder. Louisiana Code of Criminal Procedure article 814 provides an exclusive list of responsive verdicts to that charge. The only responsive verdicts to second degree murder are guilty, guilty of manslaughter and not guilty. The trial court was required to instruct the jury on those three responsive verdicts. Although the trial court enumerated the responsive verdicts and portions of the definition of manslaughter to the jury, the defendant alleges error in the trial court's failure to present the entire manslaughter statute to the jury.
The record does not contain any contemporaneous objection to the charges made. Nor does the record indicate that any special instructions were requested. Under these circumstances, the defendant is precluded from raising such an alleged error for appellate review. LSA-C.Cr.P. art. 801. As enunciated in State v. Mart, 419 So.2d 1216, 1218 (La.1982), the contemporaneous objection rule serves two laudable and related purposes. The first is succinctly stated in Professor Dale Bennett's original comments to LSA-C.Cr.P. art. 841: to prevent the defendant from having "an anchor to windward" to urge for the first time in the event of conviction. In fairness to the State, the defendant cannot simply watch the proceedings unfold and silently hope that the State will introduce inadmissible evidence or that the trial court will commit error. Significantly, the rule also prevents the defendant from adopting, as a matter of trial strategy, one approach, and then, if that approach fails, arguing a contrary view on appeal. Furthermore, the defendant has a duty to alert the trial court, if he objects to the admissibility of evidence or the method of proceeding. This allows the trial court to correct (or avoid) error, so that the verdict results from a trial which is as error-free as possible. State v. Mart, 419 So.2d at 1218.
*807 Nevertheless, exceptions to this rule have been made in individual cases where there have been fundamentally erroneous misstatements of the essential elements of the charged offense. In such cases, the Louisiana Supreme Court has adopted the view that such fundamentally incorrect jury instructions so affect the fairness of the proceedings and the accuracy of the factfinding process that due process of law requires reversal, even in the absence of compliance with legislative procedural mandates. See State v. Williamson, 389 So.2d 1328, 1331 (La.1980).
In the instant case, the alleged erroneous instruction related only to an element of a responsive verdict, rather than to the definition of the offense charged. In such a case, it is not apparent that the erroneous instruction fundamentally affected the fairness of the proceedings and accuracy of the factfinding process. See State v. Mart, 419 So.2d at 1218.
Where the defendant fails to comply with the contemporaneous objection rule, even in the case of a fundamentally erroneous instruction on the elements of an offense, he must carry the burden of satisfying this court that such failure was excusable and was not the result of trial strategy. State v. Tipton, 95-2483, p. 7 (La.App. 1st Cir.12/19/97); 705 So.2d 1142, 1147.
In the case at bar, the defendant acknowledges the absence of a contemporaneous objection, without meeting such burden.
Accordingly, this assignment of error also is meritless.

ASSIGNMENT OF ERROR NO. 3: DENIAL OF MOTION FOR NEW TRIAL
The defendant filed a Motion for New Trial, arguing that the verdict was contrary to the law and evidence, based on newly discovered evidence. LSA-C.Cr.P. art. 851. A hearing on the motion was conducted on September 9, 1994. Following the testimony of two defense witnesses, the defendant's motion was denied.
Two witnesses testified at the hearing on behalf of the defendant. One was Johnny Brumfield, who claimed that he sold drugs with the victim. One week prior to his death, the victim allegedly made the cryptic remark, that "if he ever caught [the defendant] slipping that he was going to put something on him." Mr. Brumfield claimed he understood this to mean if the defendant ever tried to "cross [the victim] out" of the drug trade, the victim would harm the defendant or try to kill him.
The second witness to testify was Terry Gatlin, an alleged eyewitness to the killing who was incarcerated in Mississippi at the time of trial. Mr. Gatlin's version of the incident was that the victim swung at the defendant with a screwdriver before the defendant hit him with a hammer.
Louisiana Code of Criminal Procedure article 851 provides in pertinent part:
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
* * * * * *
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty....
In order to obtain a new trial based on newly discovered evidence, the defendant has the burden of showing: (1) the new evidence was discovered after trial; (2) the failure to discover the evidence at the time of trial was not caused by lack of diligence; (3) the evidence is material to the issues at trial, and (4) the evidence is of such a nature that it would probably have produced a different verdict. State v. Hammons, 597 So.2d 990, 994 (La.1992); *808 State v. Prudholm, 446 So.2d 729, 735 (La.1984).
On review, the trial court's discretion will be given great weight. However, when the exercise of discretion is arbitrary and the judgment is unjust, it will be set aside. The trial judge's duty is not to weigh the new evidence as though he were a jury determining guilt or innocence, but to determine whether there is new material fit for a new jury's judgment. State v. Smith, 96-0961, p. 7 (La.App. 1st Cir.6/20/97); 697 So.2d 39, 43.
In the instant case, both witnesses' testimony was alleged to have constituted newly discovered evidence, since neither witness was available to testify for trial. Terry Gatlin, who was incarcerated at the time of trial, had been subpoenaed, but the proper procedures for producing him allegedly had not been followed. Johnny Brumfield had not been subpoenaed, because the defense was not aware that he had been in contact with the victim and had a conversation with him just days prior to the incident. However, it cannot be said that the defense, through proper diligence, could not have discovered the whereabouts of Mr. Gatlin and properly produced him. Nor can it be said that with diligent investigation, the existence of Mr. Brumfield and the nature of his testimony could not have been discovered.
The remaining questions of whether or not this testimony was material to the issues at trial and whether or not it was of such a nature to have likely produced a different result are directly connected to the fact that the new testimony challenges the credibility of witnesses who did, in fact, testify.
Newly discovered evidence affecting only a witness' credibility "ordinarily will not support a motion for a new trial, because new evidence which is `merely cumulative or impeaching' is not, according to the often-repeated statement of the courts, an adequate basis for the grant of a new trial." Mesarosh v. United States, 352 U.S. 1, 9, 77 S.Ct. 1, 5, 1 L.Ed.2d 1 (1956); State v. Cavalier, 96-3052, p. 3 (La.10/31/97); 701 So.2d 949, 951.
In the instant case, the testimony of both new witnesses was discoverable with due diligence and is not of such a nature that it would produce an acquittal in the event of retrial.
This assignment of error is likewise without merit.

ASSIGNMENT OF ERROR NO. 4: INEFFECTIVE ASSISTANCE OF COUNSEL
In this assignment of error, the defendant alleges ineffective assistance of counsel, specifically complaining of the following:
1. Alleged failure to obtain presence of a witness, failure to obtain a recess and failure to demonstrate error.
2. Failure to file a Motion for Post Verdict Judgment of Acquittal.
3. Failure to object to alleged erroneous and incomplete jury instructions.
At the outset, we note that a claim for ineffective assistance of counsel is more properly raised by an application for post-conviction relief in district court, where a full evidentiary hearing may be conducted. Where the record discloses evidence needed to decide the issue of ineffective assistance of counsel and that issue is raised by assignment of error on appeal, the issue may be addressed in the interest of judicial economy. State v. Williams, 632 So.2d 351, 361 (La.App. 1st Cir.1993), writ denied, 94-1009 (La.9/2/94); 643 So.2d 139.
The allegations of ineffective assistance of counsel raised in defendant's brief cannot be sufficiently considered from an inspection of the record alone. Essentially, defendant suggests that trial counsel was generally not prepared to go to trial. See State v. Albert, 96-1991, p. 11 (La.App. 1st Cir.6/20/97); 697 So.2d 1355, 1363. While defendant alleges that an *809 eyewitness to the altercation did not appear at trial because the subpoena was not correctly addressed, we note that the subpoena return is not a part of the record. Moreover, with regard to another witness to the altercation, defendant "presumes" that he was not present because not properly served, but further notes that he cannot measure the prejudice caused by the witness' absence at this juncture.
Furthermore, a decision not to object to a particular jury instruction could have involved matters of trial preparation and/or strategy. See State v. Albert, 96-1991 at p. 11; 697 So.2d at 1363. Decisions relating to investigation, preparation and strategy cannot possibly be reviewed on appeal. State v. Eames, 97-0767, p. 8 (La.App. 1st Cir.5/15/98); 714 So.2d 210, 216, writ denied,; State v. Albert, 96-1991 at p. 11; 697 So.2d at 1363-1364. Only in an evidentiary hearing in the district court, where defendant could present evidence beyond that contained in the record, could these allegations be sufficiently considered. Accordingly, these allegations are not subject to appellate review. See State v. Eames, 97-0767 at p. 8; 714 So.2d at 216, writ denied, 98-1640 (La.11/6/98); 726 So.2d 922; State v. Albert, 96-1991 at p. 11; 697 So.2d at 1364.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 5: CREDIT FOR TIME SERVED AND NOTICE FOR POST-CONVICTION RELIEF
The defendant complains that the trial court did not state for the record that the defendant would be given credit for time served at the time of sentencing. He also assigns as error the failure of the trial court to inform him of the prescriptive period for post-conviction relief.
The defendant was sentenced on December 15, 1993, prior to the amendment of LSA-C.Cr.P. art. 880. Prior to its amendment, article 880 provided:
The court, when it imposes sentence, shall give a defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence.
The appellate courts, when confronted with a sentence lacking the phrase, "with credit for time served," customarily would remand the cases for re-sentencing in accordance with article 880 if credit for time served was not articulated in the sentence.
However, Acts 1997, No. 788, § 1 amended LSA-C.Cr.P. art. 880 to state, "A defendant shall receive credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence." The comment to the Act states, "This article makes the credit for prior custody self-operating even on a silent record. It does not change the law." The Act became effective on August 15, 1997. However, the Act is clearly procedural, and thus, retroactive. See State v. Hayes, 97-1526, pp. 5-6 (La.App. 1st Cir.5/15/98); 712 So.2d 1019, 1023; writ granted on other grounds, 98-1603 (La.12/11/98); 729 So.2d 584; Keith v. United States Fidelity and Guaranty Co., 96-2075, p. 7 (La.5/9/97); 694 So.2d 180, 182-183. Consequently, the amendment applies to this defendant. The giving of credit for time served was automatic, without the necessity or formality of the trial court having to so state. State v. Jarvis, 98-0522, p. 4 (La.App. 1st Cir.12/28/98); 727 So.2d 605. This argument is meritless.
In an additional argument under this assignment of error, the defendant correctly contends that the trial court erred in failing to advise him of the three year time limitation contained in LSA-C.Cr.P. art. 930.8 for the filing of post-conviction relief applications. Louisiana Code of Criminal Procedure article 930.8(C) provides that, at the time of sentencing, the trial court shall inform the defendant of the prescriptive period for applying for post-conviction relief. However, a failure to do so on the part of the *810 trial court has no bearing on the sentence and is not grounds to reverse the sentence or remand the case for re-sentencing. State v. Hendon, 94-0516, pp. 7-8 (La.App. 1st Cir.4/7/95); 654 So.2d 447, 450. The trial court is hereby directed to give the defendant written notice of the prescriptive period for applying for post-conviction relief within ten days of rendition of this opinion and to file written proof in the record of the proceedings that the defendant has received the notice. See State v. Hendon, 94-0516 at p. 8; 654 So.2d at 451. Accordingly, we remand the matter solely to allow the trial court to provide the required notice to the defendant.
CONVICTION AND SENTENCE AFFIRMED. REMANDED WITH INSTRUCTIONS.